case number 23-1226. Talfi Gulf and Sierra Club petitioners versus Federal Energy Regulatory Commission. Mr. Buchbinder for the petitioner, Mr. Shainer for the respondents, Mr. Rosenkranz for the interveners. Good morning Mr. Buchbinder. Good morning your honor. My name is David Buchbinder and I represent the petitioners in this matter and this morning I would like to talk about four of the claims that we have in this case. Two are under the Natural Gas Act and two are under NEPA. Our Natural Gas Act claims first that it was arbitrary and capricious for FERC to find that 2300, I'm going to abbreviate pipeline 200-300 simply 2300 for ease, that it was arbitrary and capricious for FERC to find that 2300 serves the public in convenience and necessity while knowing and never disclosing that its actual purpose was something else entirely. Our second Natural Gas Act claim is that FERC failed to balance the impact of 2300 greenhouse gas emissions against the project's benefits. Our two NEPA claims, our first segmentation that FERC failed in its NEPA analysis to analyze the impacts of the terminal along with the impacts of 2300. And our fourth claim is that FERC failed to analyze the impacts of upstream greenhouse gas emissions from the production and transportation of the gas through 2300 that would be burned domestically. First on to need. A little history in 2019, FERC approved the Driftwood LNG terminal and the mainline pipeline to supply it. The mainline would supply all of the terminal's needs and the terminal subscribed to 100% of the mainline's capacity. 2021, Driftwood comes along and applies for 2300 and says in their application the project has been proposed to provide enhanced supply access to the natural gas market in the Lake Charles, Louisiana area. That purpose was then repeated in the draft environmental impact statement and again in the final environmental impact statement. We get to the certificate and when FERC issues a certificate all of a sudden for the first time FERC says that 2300 is quote designed to enhance and further diversify Driftwood LNG's access to natural gas supply. And when not being used to supply the terminal the project can improve the Lake Charles, Louisiana area's abilities to access gas. This is the first time that FERC said anything about the terminal needing a second redundant supply line. What was going on? Well it turns out that FERC disclosed something in a completely separate docket. In a docket dealing with the LA storage facility which is a section 7 project and in the certificate in that docket FERC revealed that term the 2300 and the terminal would be built simultaneously and operated as a single project and the main line would only be built years later after the terminal and 2300 were built and operating as a single project for close to eight years then Driftwood. So council assume all of that is correct and that 2300 is going to be built before the main line. How does that help your case on market need? Wouldn't that just show there's even more of a need for 2300? No your honor it's the point that this was not disclosed that the need for the project well the the ostensible need in the application and the DEIS and the FEIS was Lake Charles. The certificate says it's going to be a backup to the terminal it'll be back up to the main line. Now we have a situation where it turns out it's going to be the main lines supply for many many years not as a backup so even their rationale in the certificate doesn't hold water and to clarify our claims are not based either on the bait-and-switch between the application and the environmental impact statements and the certificate or in fact the lack of support for either of the two rationales in this in the certificate the need for a more diverse supply or the Lake Charles need. We point to those merely to say the lack of evidentiary support for those alleged needs supports our claim that neither of those was what Driftwood intended with this project. Those confirm what FERC said in the LA storage certificate that this project was that 2300 was being built as the terminal supply period. Our second natural gas that claim is that FERC failed to weigh the greenhouse gas impacts of 2300 against the need. FERC claimed it only needed to disclose 2300 submissions go through the social cost of carbon multiplication for informational purposes and then say it's 2300 serves the public convenience and necessity and that's exactly what this court rejected just weeks ago in New Jersey Conservation Foundation where the court said FERC asserts that it adequately weighed the potential environmental harms of the project just by disclosing the project's reasonably foreseeable greenhouse gas emissions but FERC nowhere explains whether and how the Commission considered those emissions among the adverse effects it balanced and found to be outweighed by the pipelines expected benefits. That is exactly precisely to the letter what FERC did here. On to the food and water watch that was also recently decided. Yes sir the the food and water watch talked about other aspects it didn't it said you don't have to use the social cost of carbon it didn't say what exactly what New Jersey Conservation Fund said regardless of what you do in terms of your NEPA analysis under the Natural Gas Act you still have to weigh those impacts. Food and water watch... How do you measure what the impact is on the on the climate the worldwide climate by putting in a 30 mile pipeline? Your honor it's How is that possible? It's possible by using in fact that social cost of carbon tool or some other tool the Natural Gas Act simply doesn't doesn't say well there's an impact but we can't FERC can't say... It's not even clear there's an impact of CO2 on climate human made CO2 on climate. Anyone? Respectfully your honor I think that is you know that's not an issue in this case and FERC assumes that it does and FERC agrees that there is a CO2 impact on the climate and FERC simply waved its hands and said we can't discuss the magnitude of this under NEPA we can't say whether it's significant or not under NEPA but regardless of it whether it's significant or not under NEPA FERC has to consider it somehow somehow in coming up with an answer as to whether or not the project's benefits outweigh its impacts. So in that for that argument is there some affirmative indication you see that FERC did not consider the greenhouse gas emissions you know? In its Natural Gas Act analysis? In the Natural Gas Act analysis it essentially references and incorporates the EIS in its entirety says we concluded it's environmentally acceptable and then it makes the section 7 finding and I guess the question is how do you know they didn't think about GHG emissions or didn't think about any of the other many many environmental impacts listed in the EIS? For two reasons one in the EIS they say well we're doing the social cost of social cost of carbon calculation for informational purposes. There's no indication that they're going to take it into account in their own weighing when they say it's for informational purposes not clearly for agency regulatory purposes moreover it's exactly what they did in that this court rejected in New Jersey Conservation Foundation and in FERC's brief it says all we have to disclose all we have to do is disclose the emissions and cite the benefits of the project and that's it we've done our duty in terms of weighing the greenhouse gas impacts against the need for the pipeline and that's exactly what happened here almost word-for-word on to NEPA. Our first NEPA claim is segmentation. When FERC approved the terminal and the main line in 2019 it approved them with a single EIS as a single project. Now LA Storage tells us that Driftwood is going to build the terminal and 2300 as a single project building built simultaneously they'll be completed simultaneously they'll be operated as a single unit therefore FERC should have taken into account collectively the impacts of 2300 and the impacts of the terminal. What language of NEPA are you relying on? The connected action language of NEPA. Connected action? Yes. That's in NEPA? Yes sir it is. NEPA says you have to take into account connected actions and 2300 and the terminal are absolutely connected actions the same way that FERC said the main line and the terminal were connected actions. So you're not relying on CEQ regulations? Well yes sir it is CEQ regulations that require that you analyze connected actions together. Where does CEQ get the authority to issue regulation? In the National Environmental Policy Act. No it's not in there. Then I don't know where CEQ gets the authority to issue it. That's from an executive order that was issued in 1977 I believe. Can an executive order authorize a an agency to issue regulations? Well since it's been close to 50 years of CEQ issuing such regulations and I'm not aware of any court saying that CEQ did not have this authority. This court has said it about That was not an issue that was presented here. FERC did not. I know it's a separation of powers question which can be raised by the court itself. I don't dispute that you can raise it I'm just not prepared. I'm raising it. I am not prepared to argue or discuss CEQ's authority and separation of powers. I'm sorry that's simply something I didn't prepare for. Can you address the argument that your current segmentation claim is forfeited? So I think what FERC says is you actually were on notice that about the construction timeline that is now the basis of your claim and it seemed like in your briefing you conceded you didn't raise this during the comment period before the agency. We didn't raise it in the comment period so as a NEPA issue NEPA excuses things that are justifiably omitted but more importantly as we know from public citizen is something that is so obviously you know glaringly omitted and other courts have said and if something is already known to the agency the agency knew and published in one of its own orders that the terminal and 2-300 be built together. Now the issue of waiver. I did not know that you were arguing that for that reason it was a connected action and that they needed to reissue an EIS fully addressing you know the combined impact of the terminal and this project. As I said your honor there is precedent including Supreme Court precedent that says you know if something is such a glaring omission or as this court and other courts have held if something is obviously known to the agency there's no need to raise it for purposes of NEPA. We did raise it in our rehearing petition so it is preserved in terms of review in this court. So I want to draw the court's attention to the Delaware Riverkeeper case where the court pointed out that the project in front of it and a previous project a previously approved project were linked saying the temporal nexus is clear Tennessee Gas proposed the project while the pipeline was under construction and FERC plainly was aware of the physical functional financial links between the two. This was even more egregious. The first project in Delaware Riverkeeper was under construction. Here the first project and the main line hadn't I'm sorry the terminal hadn't even broke ground when FERC knew that the terminal and 2-300 would be constructed together. Finally I'd like to talk about upstream emissions. There's two issues one legal and one factual. I don't think there's really a legal dispute that FERC's obligation only goes to the portion of the gas 2-300 will carry. The upstream emissions of the portion of the gas will carry for domestic consumptions which is 1.5 percent is the the number now. The factual issue is that FERC says to do this it needs all sorts of information transportation I'm sorry location of supply source whether the gas would come for new existing production etc and we gave them precisely that information. We gave them the quotes from Tellurian's Tellurian is the parent company of Driftwood LNG and the Driftwood pipeline their head of production said we plan to drill 13 wells in the Hainesville shale that will operate as it looks to build sufficient feed gas supplies to support first phase of the proposed Driftwood export terminal and then Tellurian's head of production the next year said we're purchasing another 5,000 acres in the Hainesville shales where these assets provide Tellurian with cash flow and a physical hedge for the Driftwood terminal. Your time's expired I'll ask if you just can bring a conclusion to you your opening remarks I'll give you some time on rebut. Thank you. May it please the court. Houston Shaner for Respondent Federal Energy Regulatory Commission and I'd like to start with the most extreme claim in this case and that's my colleagues assertion of some sort of deliberate concealment or deception by the Commission. There are at least two major problems with this argument. First it's forfeited in fact it's been forfeited twice over. If you refer to the request for agency rehearing by the section that's J 711 715 you will see no theory about the Commission deliberately hiding the true purpose of the terminal I'm sorry of the project to supply gas to the terminal for exports until until the certificate order. In fact you won't really find any sort of conspiracy theory whatsoever they merely attack the idea of redundancy. If you if this were such a dramatic bait-and-switch by the Commission you would certainly expect petitioners to make a big deal out of this and we're hearing order but they did not and so it's jurisdictionally forfeited. Worse it's also forfeited at the appellate level. While they make a lot of this argument and this theory in the reply brief simply not found in the opening brief whatsoever. They say that there might be some different purpose there might be a replacement of the main line the project but they never make any allegations of concealment or deception by the Commission and no argument about a bait-and-switch until the certificate order. So this claim fails at at least two threshold levels. But even worse still is the fact that it's simply patently wrong. Much of this materials account is recounted in the responses to the motion to supplement the record which this panel may or may not have reviewed it's not clear who decided it but I'm happy to walk through those. Starting with the first half of the executive summary of the application by Driftwood submitted to Commission back in 2021 JA4 they say the project runs from the Ragley area all the way to a final interconnection point and meter station 12 within the footprint of the Driftwood LNG facility. Any reasonable reader would understand that to mean that the project can deliver gas to the terminal. If that weren't enough you then you then move to Resource Report 1 in the application JA38 where they say explicitly the project can deliver gas to the terminal at that interconnection point. And then again in Resource Report 10 JA92. If the application weren't enough Driftwood did confirm that fact when they disclosed the foundation shipper Driftwood LNG in JA160 through a request to the to the to the Commission and then again in the answer at JA143 and then again at JA157 in the answer as well. So it's clear that the petitioners were on notice far far before the certificate order in fact roughly two years before the certificate order the project that runs to the terminal might supply the terminal. But they're banking not only their need argument but also their segmentation argument on that fact. Not only is it forfeited but it's patently wrong. I think more fundamentally their argument on concealment and need simply misunderstands how substantial evidence review operates. The Commission makes a finding that the market in southwest Louisiana can support two new pipelines even if one is redundant to the other. As long as there are some evidence supporting that inference the Commission's result can be sustained and is conclusive under the Federal Power Act and is laid out in pages 32 through 34 of the red brief. There clearly is a great deal of evidence in favor of redundancy and reliability need for that particular market area. That includes precedent agreements, industry practice, multiple industry practice or practice across multiple industries as well as corroborating comments from large industrial players like Intergy. At the same time there is simply no answer to the market study evidence supporting the need for non LNG gas supply to Lake Charles area that is simply unanswered about the opening brief as well as the agency we're hearing requests. I don't hear any response to that in my friend's opening argument as well. But that simply means that as long as there's some substantial evidence on project need this court can affirm. But affirming on the same ground means that the segmentation claim necessarily fails as well because their only excuse for forfeiting this argument below not raising this concealment theory during the NEPA process is that they claimed they couldn't have known that the project was going to deliver gas to the terminal but obviously that's wrong. Well today they're saying that it was just so obvious maybe if you recognized that 2300 was going to supply the terminal it's just obvious that in the same way the main line and the terminal were considered together this should have been considered together with the terminal. What's your response to that well potentially new argument? Sure if I'm understanding correctly we're getting more to the merits rather than forfeiture there? No his response to my question about forfeiture was that there's an exception when the matter is so obvious to the agency that there was no need to raise it in a comment. Well I I'm not sure the case law necessarily says that because the 2020 CEQ rule which is mandatory and at least binding on them assuming Judge Randolph putting aside Judge Randolph's arguments they have a specific duty a duty to raise this issue specifically at the EIS stage but they failed to do that because the Commission is entitled to be put on notice of this argument particularly something is striking is the idea of a deliberate concept deliberate concealment and the relying on that CEQ rule within the context of this argument Judge Randolph but certainly it's certain repealed hasn't that rule has yes but at the time of the certificate order you're still not in effect when the when the correct it's a new rule replaced it I believe why did CEQ repeal it they I could not give you all of their reasons none of their business to tell the courts how to act that may be part of it at the time the certificate order though that that rule was in effect and it also notes that if your separation of powers claim is correct then their connect to action argument goes away entirely we don't need forfeiture because it depends entirely on the most compelling arguments that I don't hear you making now is the point that the Commission made in its decision that unlike the usual situation the terminal on LNG terminal has no captive customers that so if they're going to build a pipeline to the terminal they're not going to be able to do it for free by passing the costs on to the captive customers and and so that leads to the conclusion that the only reason that they'd have to be fools to construct a pipeline when they don't need it according to according to the petitioners because they can't pass the costs on that is exactly correct and is exactly why environmental defense fund 2021 is distinguishable in this case and it's I think it's open and shut they have no real attack on paragraph 24 of the certificate order right now I would also like to move to NEPA significance and the what they call the natural gas balancing argument New Jersey Conservation Fund is clearly significant on the NEPA front because they have never at any time raised northern natural arguments based on that precedent so there's no similar failure to explain in fact on NEPA significance this case is exactly like Port Isabel where they raise an argument among the style of a seniors and or as well affirmed materially identical explanation they try to shift this argument into a more fuzzier in general natural gas or natural gas like argument saying you have to use social cost of carbon to balance costs and benefits under the National Gas Act this court has never held that in fact this court affirmed in both Alabama municipal and food and water watch the Commission's explanation in those cases and here the social cost of carbon is not fit for project level review they've never had any persuasive authority distinguished that or any reason why we have to use it for each project each individual project in fact that's never in the case and in fact that goes back to biological diversity and the 2022 Delaware Riverkeeper network decision which at 115 says that once the Commission properly conducts an environmental analysis underneath bed incorporates the is a judge Garcia mentioned then it has reasonably concluded that the the benefits of the project outweigh the costs and that's all that this court is required and judge Wilkins I would also note you're exactly correct food and water watch this cleans up any possible other NEPA or Natural Gas Act arguments about the social cost of carbon because there is no need to make an up-or-down call about significance for individual impacts and that's clear but you just briefly address the upstream emissions argument and I was turned there now yeah so I started with the letter so I 13 wells and explained why yeah so we need to take those letters individually they now can see there's no legal causation over exported gas but that removes any relevance of the press release a j14 and the Weber article which mentioned 13 wells at j4 22 because those articles they mentioned tellurian holdings within the Hainesville shale but they do not say that's even going to the project and they only suggest that the gas used that the gas from the tellurian wells will go to exports but that means it's already been carved out of any any rumble legal causation well originally by earth reports in 2016 which is what the section 3 and section 7 case but more recently by 2024 Albany municipal decision that very clearly says that a section 7 pipeline sending gas to a section 3 facility for export is not the legal cause of upstream emissions that leaves only the Baker article which is sandwiched in between those that's a j4 16 that does mention the project but here it does not say that tellurian is going to drill any wells in any specific basins in fact it says that the project part of the point of the project is to source gas from multiple producing basins around the country you'll see that in the map it's a page 12 of the red brief literally half the United States but if that even if that doesn't fail legal causation it clearly fails on foreseeability grounds under Burkhead and more recently under the 2024 food and water watch decision where the Marcellus Utica shale was too large to be able to to attribute foreseeability to upstream emissions but this case involves not only the Marcellus Utica shale as that map demonstrates but also five or six other gas shales around the country and I see everyone off time but I'm happy to answer any other questions for my half all right thank you thank you and we'll hear from mr. Rosencrantz you good morning your honors and may it please the court Josh Rosencrantz representing the intervenors your honor just took a few points really by way of framing I'll add to mr. Shaner's point about this accusation of collusion because petitioners are building both their segmentation argument and their need argument around the notion that FERC colluded with driftwood to hide from the public the actual planned sequence and that is their excuse for fitting the issue in addition to the points that mr. Shaner made let me just point out that it is clear on the record in this docket forget about the Hackberry certificate in this docket FERC and petitioners knew full well that we planned to build the line 200 300 before the main line we set it in a filing on the public record on February 22nd of 2022 sorry February 11th 2022 while the application was pending now it's not in the joint appendix because petitioners did not raise this until their reply but it is at accession number 2022 0 0 to 11 that's the date 52 21 and in that document we very clearly laid out the sequence first comes line 200 then line 300 then the main line second framing point listening to line duplicate the 200 and screen line 300 line does the main line duplicate the 200 300 line no your honor they provide separate purposes the 200 300 does supply optionality to the terminal but it also is designed to supply the market and I would note the petitioners are completely ignoring the market study that says that there is an enormous demand and I think we'll be listening to the argument today realize there's an enormous disconnect because petitioners are pointing to the 92% the driftwood LNG is subscribing to and they are saying incorrectly that is only for the terminal driftwood LNG owns a terminal yes but it is also a market participant it is going to be selling the gas to the market when it doesn't need to provide the gas to the terminal so 92% that driftwood LNG subscribes to is a really expensive expenditure to judge Randolph's point it's way more expensive than the gas itself and there's no way they would be subscribing if they did not plan to use the capacity to supply the market third major point for all of these protests it's worth asking petitioners what exactly do you want FERC to do differently on remand FERC already performed a full environmental impact statement and analysis on the mainline and at the same time on the terminal it performed a full environmental impact statement on line 200 300 and then when it was analyzing line 200 300 it analyzed all three together by way of cumulative effects finally I need to underscore a point that has not come up but petitioners emphasized by way of citing Transco and the NJCF case and a Port Isabel if this court perceives any error in FERC's order it should at most remand without vacating first the Commission will almost certainly reach the same result for reasons that I've already mentioned and second vacatur would be downright disastrous I know that shovels have not hit the ground yet on line 200 300 but they hadn't hit the ground yet in Commonwealth either and in this project as in Commonwealth presents years of planning massive financial investment complex coordination among industry participants and government bodies and killing the project or at least postponing the project I should say could amount to killing the project and the jobs that come with it I would note that FERC found an urgent need to supply gas to the Lake Charles area and vacating the order will only delay the satisfaction of that need to the detriment of the public and the and businesses we could vacate and then stay the order your honor I would urge the court not to because that is the equivalent of a remand because if you're staying the effect of the vacatur you could achieve the same thing simply by remanding and I would underscore the point that a vacatur is just hugely disruptive way more way more disruptive than simply a remand telling FERC to go back and do its work differently or better for these reasons your honors we respectfully request that this court reject the petition thank you all right mr. book binder we'll give you three minutes in rebuttal thank you your honor first of all as to the needs argument as we said before the flaws with the market study the fact that FERC engaged in a bait-and-switch and the issues surrounding the the whether there's factual support for the idea that they meet that the two three hundred would bring a diverse supply to the terminal that mainline would not those are not our arguments we are not saying that those are you know that makes the FERC's findings arbitrary and capricious we're pointing those out as evidence supporting our claim that this terminal was meant for another purpose entirely it wasn't meant for either of those purposes now on the segmentation claim the driftwood says we told them it's in the record that we're going to build the mainline after two three hundred yes in the 28 J reply filed about ten days ago they pointed to a 924 page document they didn't tell us what page in that 924 page document to find this statement and we found the statement it's in a section dealing with engineering issues and FERC asking about engineering of if you're going to be building some part of two three hundred where you're going to build the mainline how are you going to do this properly under engineering principles and then they say in that that they're going to build the mainline afterwards it doesn't say they're going to build two three hundred and the terminal together as far as anyone would know the terminal gets built two three hundred gets built mainline gets built they get built together or as they're insisting we're building two three hundred to serve the Lake Charles market okay then you build two three hundred and then you build the terminal and the mainline you can't tell from a statement simply that they're going to build the mainline after two three hundred when they're going to build the terminal that's our issue terminal and two three hundred together the issue is what would what would a new environmental impact statement look like well two things about that first of all the purpose and need of the project statement would look a lot difference the existing one said if this is two three hundred designed to supply the Lake Charles market that purpose and need would look a lot different it was two three hundred is designed to be the terminal supply of gas for at least eight years and who knows how much longer beyond that more importantly the alternative analysis would be remarkably different if the purpose if the new EIS says the purpose of this project is to serve as a backup supply a more diverse supply etc any sort of supply to the terminal the alternative analysis would begin with well you've worked has already approved a pipeline to supply this terminal those are things that are simply don't exist in the in the current EIS the gas for export issue on upstream you can't separate out the gas a pipeline will carry that's being carried down to the terminal you can't say this is the gas we have a separate source of gas for the domestic use and the rest of this gas is going to go for export once those driftwood wells that that gas goes into that pipeline it gets intermingled and then you don't know you can't separate out the molecules that go for export from the molecules that will be used domestically last is the idea that you can't use the social cost of carbon for evaluating the impacts of greenhouse gases of the project level I have never seen an explanation from FERC why this is so they keep saying it's good it's okay for doing at a regulatory level but not at a project level I have seen no explanation from FERC ever as to why 40 tons or 100 tons of greenhouse gases emitted by a project is qualitatively different from the same amount of that gas when it's when it's emitted as a result of a regulatory action I see my time is up your honor if there are no questions we ask you to vacate this certificate and remand to FERC thank you we'll take the matter under advisement
judges: Wilkins; Garcia; Randolph